**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**CAROL HICKMAN SANDERS**                                                **PLAINTIFF**

V.                            Case No. 5:07CV00005 BD

**MICHAEL J. ASTRUE,**
**Commissioner, Social Security Administration**[1]                     **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carol Hickman Sanders brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for Disability Insurance benefits ("DIB") and Supplemental Security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").

**I.   Procedural History:**

Plaintiff filed her applications for DIB and SSI on August 20, 2003, alleging that she became disabled from a motor vehicle accident on December 28, 2002. (Tr. 20, 52-55, 75, 184-86)  She claims disability due to high blood pressure, a torn ligament in the

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.  He is therefore substituted as the defendant under Fed.R.Civ.P. 25(d)(1).

right knee, a fractured right tibia, depression, right lower extremity edema, low back pain, and pain in the right leg, knee, and foot. (Tr. 21, 250)

After Plaintiff's applications were denied initially and upon reconsideration, she requested hearing before the Administrative Law Judge[2] ("ALJ"). (Tr. 32-35, 46) A hearing was held on November 2, 2005. (Tr. 241) On February 22, 2006, the ALJ issued a decision denying Plaintiff benefits. (Tr. 20-25) The ALJ found that Plaintiff was not disabled because she could perform work available in significant numbers in the national economy. (Tr. 23-25) Because the Appeals' Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. (Tr. 5-8)

## II.   Background:

Plaintiff was 39 years old at the time of hearing and had a high school education. (Tr. 243) For purposes of the Social Security Act (the "Act"), Plaintiff was classified as a "younger individual" at the time of the ALJ's decision. (Tr. 24) 20 C.F.R. §§ 404.1563(c), 416.963(c) (2006). She had past work experience as a dietary aide and certified nurse assistant, which a vocational expert classified as unskilled to semiskilled light to medium work. (Tr. 246-48) Plaintiff was living with her husband at the time of the hearing. (Tr. 258-59)

---

[2]The Honorable Everet Dail Stiles

### III.   Findings of the ALJ:

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I) (2005).  If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience.  *Id*. at §§ 404.1520(b); 416.920(b).  In this case, the ALJ found that Plaintiff was not engaged in substantial gainful employment and that she had not been so engaged since the onset of her alleged disability.  (Tr. 20)

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.  *Id*. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If not, benefits are denied.  *Id*.  A "severe" impairment significantly limits a claimant's ability to perform basic work activities.  *Id*. at §§ 404.1520(c); 416.920(c).  The ALJ found that Plaintiff had a history of treatment for right posterior cruciate avulsion and bone bruise, chronic pain syndrome, obesity and depression.  (Tr. 20)   He found that Plaintiff suffered from a "severe" impairment but not a severe mental impairment.  (Tr. 20, 22)

Step 3 involves a determination of whether the severe impairment meets or equals a listed impairment.  *Id*., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If so, and the duration requirement is met, benefits are awarded.  *Id*.  If the claimant does not meet or equal a listing, then a residual functional capacity assessment is made.  *Id*., § 404.1520(a)(4) and

§ 416.920(a)(4). This residual functional capacity assessment is used at Steps 4 and 5. *Id*. The ALJ determined that Plaintiff did not suffer from any impairment or combination of impairments that met or equaled a listing and proceeded to make a functional capacity assessment. (Tr. 20-21)

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id*., §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If so, benefits are denied. *Id*. The ALJ determined that Plaintiff could not return to her past work. (Tr. 23)

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given her age, education and work experience. *Id*., §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id*. After hearing the testimony of the vocational expert, the ALJ determined that Plaintiff could make an adjustment to other work. (Tr. 23-25)

Plaintiff contends the findings of the ALJ are not supported by substantial evidence because the ALJ erred in his assessment of Plaintiff's credibility under *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984) because he did not analyze medical records that were produced after Plaintiff's hearing. The Commissioner argues the ALJ properly assessed Plaintiff's credibility because the medical records referenced by Plaintiff were part of the record considered by the ALJ and support the ALJ's conclusion.

**IV.    Legal Analysis:**

   A.    *Standard of Review*

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it."  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).  The Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner."  *Pelkey v. Barhart*, 433 F3d 575, 578 (8th Cir. 2006).

   B.    *Subjective Complaints of Pain*

Plaintiff contends the ALJ did not give sufficient weight to her subjective complaints of disabling pain.  More specifically, the Plaintiff argues that in coming to his conclusion that her subjective allegations were not supported by the objective medical evidence, the ALJ did not give sufficient consideration to affidavits and medical records regarding her left ankle, right knee, right elbow and depression that were presented to supplement the record after the hearing.

The ALJ is responsible for deciding fact questions, including the credibility of a claimant's subjective testimony about her limitations. *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." *Id*. at 714; see also *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain.").

This Court is not required to reverse the decision of the ALJ because there is evidence in the record which the ALJ did not discuss or which contradicts his findings. The test is whether there is substantial evidence in the record as a whole to support the ALJ's decision. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

In this case, the ALJ acknowledged that the record had been supplemented after the hearing with additional testimony and medical evidence. (Tr. 24) He considered Plaintiff's subjective complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984) (Tr. 22-23). The ALJ was in the best position to gauge the credibility of the testimony, and those credibility determinations are entitled to some deference. *Estes*, 275 F.3d at 724.

The ALJ made express credibility findings and gave reasons for discrediting the Plaintiff's testimony. See e.g. *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996). The ALJ noted that Plaintiff's subjective complaints of pain were inconsistent with the

6

medical findings. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (absence of medical evidence supporting subjective complaints of pain is a factor which supports discounting such complaints). Further, the medical records submitted by the Plaintiff to supplement the record were also inconsistent with the Plaintiff's complaints of disabling pain and supported the Commissioner's decision.

1. *Left Ankle*

Plaintiff claims that the ALJ did not consider surgery performed on April 15, 2004, on Plaintiff's left ankle relating to a fracture of the distal tibial metaphyseal diaphysis, and a fracture of the fibula. However, the medical records related to this surgery do not support Plaintiff's complaints of disabling pain. In his notes from a May 5, 2004 post-operative visit, John O. Lytle, M.D., who performed the surgery, reported that Plaintiff was healing satisfactorily, and x-rays showed the tibia and fibula to be in excellent position. (Tr. 235) Dr. Lytle noted that Plaintiff could return to work at limited duty. (Tr. 235) At her next post-operative visit on June 16, 2004, Dr. Lytle noted that the Plaintiff was "healing nicely." He also reported the alignment was good, and there was no gross swelling. A progress note from a visit to DCS-ARK on October 14, 2004, indicates that Plaintiff reported her ankle was better. (Tr. 216)

2. *Right Knee*

Plaintiff claims that the ALJ also did not consider surgery performed on Plaintiff's right knee on June 28, 2004. Again, the medical records from Plaintiff's knee surgery are

not consistent with Plaintiff's complaints.  In his operative report, Dr. Lytle reported that Plaintiff had a "lateral meniscus tear" in her right knee which was repaired, but the anterior cruciate ligament was smooth and intact and "overall the knee is maintained." (Tr. 230)  Dr. Lyle recommended that Plaintiff begin an aggressive rehabilitation program for strengthening and range of motion.  (Tr. 231)  A report from Plaintiff's post-operative visit five months later revealed that the Plaintiff's biggest problem was that she was still weak, and Dr. Lytle again recommended rehabilitation therapy for the knee.  (Tr. 232)  The record does not reflect that Plaintiff complied with Dr. Lytle's prescription for aggressive rehabilitation or that Plaintiff returned to Dr. Lytle complaining of knee pain. A progress note from a visit to DCS-ARK on October 14, 2004, indicates that Plaintiff reported that her knee was better.  (Tr. 216)  Bilateral x-rays of Plaintiff's knee taken on June 30, 2005, showed an accessory ossicle but did not show any fractures or dislocation in either knee.  (Tr. 198)  Based on the record, the ALJ did not err in discrediting Plaintiff's complaints of disabling knee pain.

    3.    *Right Elbow*

Plaintiff contends that she had surgery on her right elbow on or around August 9, 2004.  Plaintiff submitted affidavit testimony to the effect that records of this procedure were not available because Dr. Robert Gullett, who performed the surgery, has closed his office.

The record contains a progress note from DCS-ARK showing that Plaintiff reported with pain in her right elbow on August 9, 2004. (Tr. 219) There is no other evidence in the record, however, that Plaintiff complained of right elbow pain to any of her medical providers after the date of the alleged procedure. Thus, even assuming all the facts Plaintiff alleges about her elbow were true, there was no medical evidence to support Plaintiff's claims of continuous, on-going pain in her right elbow or any functional limitation related to the alleged impairment. Accordingly, the ALJ correctly discounted Plaintiff's complaints of disabling elbow pain.

    4.    *Depression*

Plaintiff alleges that her depression is a severe impairment. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activity." *Kirby v. Astrue*, 500 F.3d 705 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287 (1987) and 20 C.F.R. § 404.1521(a) (2005)). The ALJ acknowledged Plaintiff was treated with antidepressant medications, but found that her depression was not "severe" within the meaning of the regulation. (Tr. 22) The ALJ noted that Plaintiff had never sought or been referred for mental health counseling for depression. (Tr. 22-23) The ALJ also found that Plaintiff's daily activities were "only mildly restricted" due to emotional causes, and Plaintiff had a "mild deficit in her ability to function socially." (Tr. 22) The ALJ pointed out that "the record does not reflect any actual episodes of deterioration or

9

decompensation in work settings due to a mental impairment." (Tr. 22)  Thus, there is substantial evidence on the record to support the ALJ's conclusion that Plaintiff's depression was not a "severe" impairment.

## V.     Conclusion:

The Court has reviewed all of the evidence in the record including evidence submitted by the Plaintiff to supplement the record, all of the medical evidence offered at the hearing, the agency physicians' assessment, and the hearing transcript.  There is substantial evidence in the record as a whole to support the ALJ's conclusion that Plaintiff's subjective allegations were not borne out by the overall record and were not fully credible, and that Plaintiff had the residual functional capacity for unskilled sedentary work where she could alternately sit or stand and where she was not required to operate foot controls.

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the case, this 6th day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE